The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oye, oye, oye, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right. First case we'll hear this afternoon is Galvan versus Garland and Mr. Sansone. Can you hear me? Yes, Your Honor. All right. You're on. I guess you want to make an introduction. Is that it? Exactly. Thank you. Good afternoon, Your Honors, and may it please the Court. Nick Sansone on behalf of Petitioner Servando Gonzalez Galvan. I have with me today Abby Holland, a third-year law student at Georgetown University. Mr. Gonzalez Galvan has given permission for Ms. Holland to represent him in court today. So with the Court's leave, she will now present oral argument on his behalf. Thank you, Mr. Sansone. Ms. Holland, welcome. And is this your first argument? Yes, Your Honor. Well, we're glad to hear from you. Why don't you go ahead and start? Thank you. Thank First, he misapplied the governing legal standard under Enri Monroyal because he failed to evaluate the serious medical diagnoses in this case, including Mr. Gonzalez Galvan's children having generalized anxiety disorder, dyslipidemia, prediabetes, and obesity. Second, the I.J. failed to provide a reasoned explanation for his hardship determination. And third, the I.J. ultimately erred in his if he were permanently removed. Now, it is well established that this Court has jurisdiction to review the first two legal errors in this case, each of which independently require remand. But should the Court address the third legal error in this case, which it need not, this Court has jurisdiction to review the I.J.'s ultimate hardship determination under Guerrero-Las Brias. With this Court's permission, I'd like to begin by addressing the I.J.'s failure to apply the proper legal standard and failure to provide a reasoned explanation for his hardship determination. Now, under Enri Monroyal, an I.J. is required to evaluate the hardship that an applicant's qualifying relatives would experience in the aggregate. And what this means is looking at the ages, circumstances, and health of qualifying relatives along with any other hardships the family would face. And the Board has consistently recognized that serious health issues meet the and extremely unusual hardship and that generalized anxiety disorder is such a serious health issue to meet that standard. Now, Mr. Gonzalez-Gabon's daughter, Amy, has experienced generalized anxiety disorder since at least 2015. Her doctor explained that her treatment plan includes the fact that her family is a strong parental support structure and that she has to regular parental interaction to manage her symptoms. Now, as a definitional matter, what generalized anxiety disorder is, is a response to events around an individual that is disproportionate to what the circumstances face. So, Amy already has a diagnosis that requires her to manage symptoms that are disproportionate to what she's facing. But now, as a result of her removal from the home, Amy credibly testified that her generalized anxiety disorder has gotten worse and her anxiety attacks more frequent as a result of her father's removal from the home. But combine this with the fact that now she's also having to work 40 hours a week to help support her mother, who now is shouldering the burden of caring for the family financially, and she's also trying to complete her high school education at this time. The family also has other hardship in the fact that Amy and Aldo have both been diagnosed with prediabetes, dyslipidemia, and obesity. And Dr. Mirza, their doctor, explained that the fact that they were going to activities to manage their symptoms was critical so that they could keep progressing on the path that they had started. But now... Ms. Holland, excuse me, you're giving us a very thorough factual analysis of the health issues, but it seems to me that it would be more helpful if you first tell us why these health issues meet the legal definition of exceptional and extremely unusual hardship that's set out in the statute, and talk about Guerrero-Las Brias, and tell us how we have this issue in front of us in the first place, before we go further into the facts. You've been very helpful setting the stage here, but if you could tell us legally now, under the statute, how we get to this issue within our jurisdiction as conferred under 1229B. Your Honor, this court need only reach the a proper application of the legal standard and a reasoned explanation by the IJ, which is what my conversation up until now has been addressing, the fact that the IJ didn't properly apply what Monreal requires and didn't give a reasoned explanation for his determination. If this isn't a mixed question of law and fact, then don't we lack jurisdiction to review it in the first place? No, Your Honor. Why not? Because if it's a legal error in the sense that the IJ didn't provide the proper legal standard or apply a reasoned explanation in his analysis, that independently requires remand. In cases like Cordova v. Holder and Oxygen v. Lynch have established that this court has jurisdiction to review those kind of legal errors and remand on that basis. But there's also this separate basis for jurisdiction, which is the Guerrero-Las Brias analysis. And what Guerrero-Las Brias says is that the application of law to undisputed facts is a question of law over which this court has jurisdiction. And in this case, the facts are undisputed. Even the government does not dispute that Amy has generalized anxiety disorder that is deteriorating and that the children also have other medical diagnoses in this case. The only question left for this court under a Guerrero-Las Brias analysis is that whether all of those hardships that the children are facing meet the standard for exceptional and extremely unusual hardship. Okay, well tell us how you describe the legal standard here. We have statutory words. How do you describe that as being a legal standard? Your Honor, the legal standard here is the exceptional and extremely unusual hardship standard that the BIA laid out in In Re Mon Re Out. And what In Re Mon Re Out says is that serious health issues make a strong showing of exceptional and extremely unusual hardship. And the BIA has also recognized that generalized anxiety disorder is a serious health issue meeting that standard. And so what this exceptional and extremely unusual hardship requirement requires this court to do or the BIA to do is to evaluate the serious health issues in this case and also to look at any other aggravating factors in the case such as financial hardship. And both are present here. The fact that Amy has generalized anxiety disorder and other children also have medical diagnoses that are worsening as a result of their father's removal from the home is combined with the fact that Mr. income as a result of his removal from the home. So that combination meets the standard for exceptional and extremely unusual hardship as the BIA has laid out in cases like In Re Mon Re Out and In Re JJG. So the IJ also failed beyond the fact that he didn't properly apply the In Re Mon Re Out standard by not giving a reasoned explanation for his hardship determination. And so what the IJ would have been required to do under Cordova v. Holder and under Atassi v. Holder is to evaluate the legally significant evidence in this case. And that's something that IJ just did not do. The IJ said that we look for serious health issues in this kind of analysis. There is a diagnosis of ADHD, but that's not the kind of diagnosis to meet the standard for medical diagnosis in this case and explain why they couldn't meet the standard for exceptional and extremely unusual hardship. And so because he didn't provide that analysis, that is an independent legal error that he committed, which requires remand from this court. And so the IJ's failure to properly apply In Re Mon Re Out and his failure to provide a reasoned explanation for his jurisdiction. And on these basis, we would ask this court to grant our request for review and remand. If this court has no further questions. I do. What aspect did you believe the IJ overlooked in terms of the children's condition? I mean, the court referred to the anxiety disorder and referred to the other conditions in a very generalized way. But the question is, basically, we have all the children suffering from anxiety. They've lost a father or are losing a father in presence. And the medical condition, aside from the mental anxiety and the counseling that's necessary for that, two older children are obese and pre-diabetic, which requires exercise and diet correction. But those are the questions gets back to Judge Keenan's question of why is that exceptional and extremely unusual? Anytime you take a 60% breadwinner from a family of six and remove him from the family, that's going to cause a baseline anxiety, upsetness, tearing, crying, and so forth. I think your burden in this is to show something significantly more if we give the words of ordinary meaning. Your Honor, what every family would experience if a loved one is deported is something like sadness or feeling like they're going to lose income as a result of that applicant's departure. But that's not what we're dealing with here because not every applicant has a family with four children who each have distinct medical diagnoses. Without getting the fancy name, their diagnoses, all of them are basically anxiety for losing the father. And the two older are obese and have pre-diabetic. Now, what else is there medically involved? Your Honor, respectfully, only one child has generalized anxiety disorder, and that's Amy. And IJ only said- But the others are receiving counseling, right? The two younger ones are receiving counseling. They were crying. They wake up crying and are obviously very upset by the situation. And the two older are in the same situation because their anxiety increases. But I'm asking what medical condition other than what I just said, the anxiety caused by the loss of a parent and obesity coupled with pre-diabetes. But what other medical condition do you suggest was overlooked? Your Honor, respectfully, I'd just like to return one moment to the generalized anxiety disorder because it is true that the two younger children, Natalia and Sophia, are in counseling now. But that was as a result of their father's removal from the home. Amy's had generalized anxiety disorder since 2015. And her treatment plan explains that having her father is the pillar and support structure of the home. I understand. And you argue that that's been increased. I've acknowledged that. And so did the IJ. The IJ even referred to it by name in his report. But my question is, and you haven't answered, I'm sorry, is what else than what I just suggested makes this extremely unusual? Your Honor, the IJ did not explicitly mention generalized anxiety disorder. But in addition to that diagnosis, the IJ also didn't evaluate the fact that the younger children, Sophia specifically, has had kidney infections and splenic abscesses that have required additional care. And he also didn't consider the fact that the children's physical activities were as a result of their pre-diabetes, dyslipidemia, and obesity. And he never connected that diagnosis to those children's activities, which is the separate legal error of reasoned explanation. But he also, in addition to looking at one specific diagnosis at a time and deciding whether or not it meets the standard for exceptional and extremely unusual hardship, the IJ also had to consider the aggregate hardship that the family would face. So the fact that all four children have medical diagnoses, in addition to the fact that the family is losing income. And I would compare this to a case like N. Ray. I'm sorry, Your Honor. I the court explained that the standard to meet exceptional and extremely unusual hardship is not such that only a few people will meet that standard. It's not, they said, it's not such that only a handful of applicants can meet that standard. And it doesn't raise the standard to be unconscionable. Rather, what the court and what the IJ should have done is conducted a cumulative analysis, as N. Ray Gonzalez-Racinus explains, to determine whether or not the aggregate of all these hardships meet the standard for exceptional and extremely unusual hardship. And that's just something that the IJ did not do here by neglecting the medical diagnoses of generalized anxiety disorders, the fact that the children have obesity, pre-diabetes and dyslipidemia. And the fact that, and the fact that Mr. Gonzalez-Galban is a pillar for that family. And he even acknowledged at the end of his opinion that they have, you know, made a strong family, that Mrs. Prez-Lagunas and Mr. Gonzalez-Galban have worked together to create an environment where their children would feel loved. There's no doubt you remove the breadwinner, well, 60% breadwinner, so to speak, but he's also the father of the family and the family lives together. You remove him and that's a hardship, but that's inherent in the district court. When I'd sentence a defendant and send him to jail and he's the breadwinner, the only breadwinner, I always commented, it's unfortunate that we also have to sentence the family because they suffer almost as much, but that is inherent here. And I think the statutory exception here, which is creating some discretion is a pretty serious one. It has to be part what we would normally expect when you remove the breadwinner of a six-person family. And in this case, we have some medical effects on the children. Amy is still going to college. She's working, helping support the family. And the younger kids, children are not receiving medicine. They're getting counseling. And Aldo, I don't know if he suffers from any medical condition except for his anxiety and disappointment. So it's a pretty stiff bar when the presumption is that he doesn't satisfy the right to stay in the United States and he has to overcome that to meet the standard. And I know you've listed these things and it's very sad when you read this, you share their anxiety and there's no doubt about it. But I think we do understand. Why don't we hear from your colleague, unless you have something further to respond. Your Honor, the only thing I would respond is that if the IJ did not think that these were serious medical diagnoses and that the aggregate hardship wasn't sufficient, then remand is appropriate on that basis alone because he never explained why these medical issues could not be serious. And that's a violation of this court's holding in Cordova v. Holder. Thank you. This court did spend, I'm just looking at page six of the opinion and the whole page is talking about the different conditions of the children, the anxiety, the ADHD and the anxiety. Well, okay. I understand the argument. All right. Why don't we hear from Mr. Engler? May it please the court, Micah Engler on behalf of the Attorney General of the United States. I'd like to just touch on what you were discussing there at the end before getting into the jurisdiction. And the government would contend that the immigration judge did provide a reasoned explanation for his decision and appropriately reviewed the entirety of the record. The immigration judge specifically said that he reviewed the medical records. The board then on it reviewed all the medical conditions before making its hardship determination. Moving to the jurisdictional issue, the large question in this case is whether the court has jurisdiction to review agency decisions that a petitioner did not demonstrate exceptional and Judge King. Okay. Thanks. Mr. Engler, as we get started on this, it's pretty clear we're wading into a circuit split. You know, you've got six circuit on one side, the 10th and the third on the other. And the difficult part of this for me is the real breadth of the decision in Guerra-Lasprilla. I mean, if I had to pick sides in Guerra-Lasprilla, I would say Justice Breyer had a compelling point, but he didn't carry the deck. And the Supreme Court had an opportunity to just limit the question to due diligence in terms of whether that presented a mixed question of law and fact, but it didn't. Justice Breyer just opines in general about mixed questions and says very broadly that questions of law encompass questions about whether several facts satisfy a legal standard. So why don't we have a legal standard here? If you could kind of focus on this when you're talking about the jurisdiction, why don't we have a legal standard here? Because it is a statutory standard. Why aren't we more or less, I don't want to say stuck, but why aren't we bound by the breadth of the analysis in Guerra-Lasprilla? Yes, Your Honor. I would say that there are a couple of different potential explanations or avenues that we could go. The first is that the Supreme Court wasn't addressing this subsection of 1252. They weren't addressing denials of discretionary relief in that decision. So this court... Why is that a distinction with the difference in terms of what constitutes a mixed question of law and fact? Because the Supreme Court could have said that this also applies to discretionary determinations, which this court and all the other circuits historically have said, we do not have jurisdiction to review these decisions. So the Supreme Court, by not extending it, may have been wanting to only extend it to 1252, I believe it's A2C, instead of A2B as well. In fact, there's a portion of that decision where the Supreme Court says that 1252A2D isn't only subject to A2C, it's also subject to A2B, and we're not getting into that. It didn't get into the issue of denials of discretionary relief. Let me ask you this. Daily judges come across the problem in a standard negligence case, which is a question of fact to decide whether somebody was negligent, and we defer to juries on that. But we consider it a question of law, whether a given set of facts rises to the level of what is negligence. So that courts will grant dismissal motions at the end of a plaintiff's case, because the facts that were shown, even if accepted as true, didn't rise to the level negligence. So the question here is, did the facts advanced by the petitioner rise to the level of the standard set forth in the statute? And actually, the reg tries to clarify it too, doesn't it? Yes, Your Honor. It's a difficult standard, you know, it's a standard of degree. And so these are always hard to make very definite, but that doesn't take away from the fact that the standard is a statutory standard. And if you argue that your facts rise to the level of that standard and that wasn't recognized, couldn't that be a question of law? Well, Your Honor, the government's position and my understanding is that this is what the 10th and the third set in theirs is that this is a judgment call. And I'm not just talking about the entire hardship prong, I'm just talking about the idea of it being an exceptional and extremely unusual hardship. That is discretionary. That is for the agencies to determine. And Congress has taken away jurisdiction to review that type of discretionary decision. Now, if there's something else related to the hardship determination that actually is applying facts to law, such as, just for example, what is a qualifying relative? Is petitioner's child a U.S. citizen? Something like that. That's not like the discretionary decision that exceptional and extremely unusual hardship is. That's different. That you could potentially apply facts that like decided facts to that type of legal standard. But this discretionary determination is the court simply doesn't have jurisdiction to review. And I believe that's what the 10th was saying when it called it, I believe it called this, it said that there's no algorithm to decide this issue. I believe that the third said that this is a quintessential discretionary judgment. And so I think that this is different than just applying facts to law, these types of questions. And so that's why the court wouldn't have jurisdiction in this type of case. And this court has said that the hardship determination is discretionary. This ultimate decision is discretionary. And even if they rise to that standard and satisfy the standard, it may be discretionary whether to allow cancellation. But the question in this case, and there seems to be some support for this is that the IJ seems to suggest that the facts that the petitioner presented did not rise to the level of the standard. It says, with the bottom line being at this point, the evidence does not support their hardship to rise to the exceptional and extremely unusual level, which is a very high standard. So the IJ is making a determination that it accepts the facts presented and says it is not sufficient under the legal standard. Now, wouldn't that be something reviewable by court? Your Honor, I do not believe that that is reviewable by the court. I think that that is precisely the discretionary determination, the judgment call that the court doesn't have jurisdiction to review. And I think perhaps it's a little confusing that we keep saying discretionary when we might be talking about two different things. Because cancellation of removal is discretionary because the statute says that the attorney general may grant it if these four elements are met. But it's an abuse of discretion if you misconstrue the law, right? If you apply the wrong standard in exercising discretion, wouldn't that be an abuse? Ordinarily, that would be the standard. But 1252A2B has come along and said the court doesn't have jurisdiction to review that discretionary determination. I understand, but if Congress says your discretion shall be exercised by number one, qualifying the petitioner with certain factors, and number two, in a circumstance that rises to a very high level of A, B, and C. Now, the IJ makes a decision and this person gets through the gates because, and he misapplies the law. And then he says this person rises to the level and sort of recasts the level. Those would both be errors of law, wouldn't it? Applying the wrong discretionary standard for the exercise of discretion. Is your honor saying that if the immigration judge had stated the wrong legal standards, then that would be reviewable? Yes. Yes, your honor. I believe that that would be reviewable. And that I think is actually a good example where the government's position isn't that this court doesn't have jurisdiction over anything related to cancellation of removal. That's not the government's position. The 1252A2B does grant the court jurisdiction over some issues related to cancellation of removal, just not discretionary determinations. Legal issues, questions of law, but not discretionary determinations. So if the immigration judge and petitioner didn't allege this, had used the wrong standard, that is absolutely something that this court could come in and say that is a question of law. But that's, petitioner hasn't accused the agency of doing that. The agency used the proper standard. The agency cited the correct precedent. And petitioner is simply asking the court to reweigh the evidence, to reweigh the hardship assessment that the agency did. And that is what historically and even now in, I believe every circuit except for the six now is saying that the court doesn't have jurisdiction to do, to reweigh this as evidence, to make this a case. Hey, I don't, Mr. Engler, I think maybe you're mischaracterizing the Sixth Circuit's decision. They're not saying that the court has jurisdiction to reweigh the facts. They're saying the court has an issue of law presented to it when there is a mixed question on whether there's extreme and mixed question of law. In fact, there is still the discretionary determination and the right of the IJ and the BIA to weigh against the petitioner. So I think maybe that, and that's what the Sixth Circuit recognized. It seems to me you're, you're collapsing what the Sixth Circuit said. It really was a two-part analysis. Yes, Your Honor. And I think I was beginning to mention this, but I think I stopped short. So I think that there's two types of discretion that we're talking about. There's a big picture cancellation of removal. The attorney general has the discretion. And so at the end, after you look at all the elements, the immigration judge says in his or her discretion, whether or not they're going to grant removal. There's also a different discretionary determination for hardship because it's a judgment call. It's a different type of And the Sixth Circuit is saying that's not a discretionary decision, even though all the circuits have previously said that that's a discretionary decision. The Sixth Circuit now is saying that it's not. And the reason the government is saying that the Sixth Circuit is now going to be allowing the courts to re-weigh this evidence is because from a practical standpoint, this issue, how could the courts apply the facts of the law without weighing the evidence? That's exactly what the hardship determination is. You have to weigh the evidence. Let's just say that we're writing the opinion of the court to agree with you. How would you, let's say you're writing it. How do you distinguish Gara-Lasbria? How do you say that due diligence as a mixed question of law and fact is any different from a mixed question of law and fact? What's so different about those concepts? Because the Supreme Court seemed to put the whole basket of mixed questions of law and fact into the reviewability category. Yes, Your Honor. I think that's an excellent question. So first of all, in terms of writing the opinion, I think I would look to the Tenth Circuit and the Third Circuit decisions. And I would incorporate some of that analysis about how. They don't do a whole lot, see, that's what struck me. The Third and the Tenth pretty much just say this is a quintessential discretionary decision, but they don't really roadmap why Gara-Lasbria doesn't require a different outcome. And that's what I've been struggling with. And why does Gara-Lasbria not require a different outcome when you're writing the opinion of the court? Well, the hardship determination is more of a judgment call than any of these others in the sense that what we're asked to do is say that if petitioner would be removed, what would the level of hardship be? And would it rise to this exceptional and extremely unusual? This is a forward-looking judgment call that is unlike all these other decisions, even the due diligence decision, where due diligence, we're looking back, what did the petitioner do? The court can come in and say that met the due diligence standard. This, we're trying to predict what's going to happen in the future. What is the level of hardship going to be in the future? And is it going to be exceptional and extremely unusual compared to other levels of hardship? The government would say that this is a unique judgment that has to be made. Let me ask you a question, try to flip the, I'm going to flip the hypothetical around. We have a situation where the petitioner's daughter had a bad dream as a result of the order for deportation because her father was leaving the country. And the IJ listens to the whole argument and says, that bad dream is exceptional and unusual, extremely unusual hardship. And lets the man stay in the country. Would you appeal that? I believe that we would not appeal that. Why not? IJ let the person stay in the country because the daughter had a bad dream? Because the agency has the discretion to make that determination. Now you think having a bad dream meets the statutory standards of exceptional What's going on here? I'm hearing some feedback. I am too. But my question is, do you think a daughter having a bad dream meets that statutory standard? No, your honor, but I think that I'm- Well, then you would have a right to appeal that wouldn't you as a matter of law? I think as a matter of discretion, the agency gets to make that decision similar to- It construed the standard in an absurd way, didn't it? The government would probably say that that would be an absurd way to construe the statute. All right. Mr. Engler, you couldn't appeal if we don't have jurisdiction. I agree, your honor. And that's why I'm saying the government would not even if it was- The attorney general, wouldn't it? They wouldn't probably ask you, would they? Because you would defer to the bad decision. Yes, your honor. I'm not sure I would be the decider there. But yes, I think that that is why the agency has the discretion to make these decisions overall. And so the court doesn't have jurisdiction to review these claims. Anything else? If there are no further questions, the government thanks the court for its time. Thank you. All right. Ms. Holland, you have some rebuttal? Yes. Thank you, your honor. So what the government just said is that citing the legal standard is enough in an IG's opinion to meet the standard for providing the proper legal standard and a reasonable explanation. And that's not right based on this court's precedent in Cordova v. Holder and in Tassie v. Holder. Because what an IJ is required to do is explain its decision under BIA precedent. And in fact, what Enri Monreal and Enri JJG require of an IJ in the hardship context is to evaluate the serious medical diagnoses of the case. And that's just IJ never did. Every family would experience that. Let's assume we conclude just this is a hypothetical. Let's assume we conclude that the IJ recognized sufficiently all the medical conditions and made this judgment. Why is the judgment something that should be overturned? Your honor, well, if he listed all the conditions as it sounds like your hypothetical suggesting, he still didn't provide a reasoned explanation as to why those conditions didn't meet the standard for exceptional and extremely unusual hardship. He said it didn't rise to the level of this very high standard. That's his conclusion. He took those facts as you presented them and says it does not rise to the level of the standard. Now, how do we handle that? In your hypothetical, he would have listed the conditions. In reality, he did not. But even if he said they didn't meet the standard, that's a violation of this court's holding in Cordova v. Holder, which is that an IJ has to create a rational bridge from the evidence presented before him to the conclusion that he reaches. And Cordova v. Holder explains it's got to be more than saying it doesn't meet the standard. I don't want to belabor the point because I was trying to get at a principle. But in this case, the IJ did talk about each individual child, how they're getting along, how one's going to college, how this one's doing this. They're getting along with somebody's extra work and this type of thing. And it's not extensive, but the court clearly considered it all. The difficult question might be is where are their fact-finding and where is their legal determinations? And obviously, we're entitled to review legal determinations, but hardly the fact-finding. Your Honor, and that's an excellent point because the IJ never found facts on whether or not generalized anxiety disorder was affecting Amy. He never mentioned the diagnosis, which is a violation of what NRAJGG requires. And remand is... That's right here. The court acknowledges that there is a diagnosis for ADHD. Your Honor, ADHD... It's not the kind of physical and mental condition that the court's opinion would qualify for hardship. Your Honor, ADHD is attention deficit disorder, and that's a different diagnosis than generalized anxiety disorder. And I think that proves our point even more that he considered one diagnosis without considering the one that was presky for him, both in oral testimony... But at 94-95, he talks about Amy and Aldo having feelings of anxiety, possible depression. So he's referencing anxiety. It seems to me that the issue you're taking is that he doesn't say generalized if he's referencing anxiety. Your Honor, I think what's important here is that Amy had the diagnosis of generalized anxiety disorder while Aldo does not, and he grouped them together. And regular anxiety is just worry that we all face on a daily basis. What generalized anxiety disorder means for Amy is that she sits in her room crying with debilitating symptoms, seeking therapy in a treatment program that explained that she had to have a strong parental family support structure to manage her symptoms. And that's different from the kind of worry that any family would experience if a loved one were deported. And for that reason, we ask that this court grant our petition for review and remand. Thank you. All right. Thank you. At this point, we would normally, as in the case of our custom, come down and greet counsel and shake hands. And that would be especially nice in view of the fact that Ms. Holland's before the court for the first time. We thank you for your argument. You did a fine job, and we expect to see you more. We can't come down and shake your hands, but we thank you both. We're not overlooking the government, you know. We thank you too for your argument.
judges: Paul V. Niemeyer, Barbara Milano Keenan, William B. Traxler Jr.